**Rick RANDOLPH, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Sept. 25, 1986.

R.B. Bertram, Bertram and Germain, John Paul Jones II, Frazer and Jones, Monticello, for appellant.

David L. Armstrong, Atty. Gen., Elizabeth A. Myerscough, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Randolph of murder and sentenced him to twenty years in prison.

The principal question is whether Randolph received a fair trial because of the failure of a juror to reveal on voir dire the fact that she was employed by the Commonwealth's Attorney.

Other issues presented involve the instructions on second-degree manslaughter and reckless homicide; the prosecutor's closing argument; the voluntariness of the confession; the introduction of the written confession into evidence and the passing of it to the jury for viewing; the refusal of the trial court to allow cross-examination of a prosecution witness as to the voluntariness of the confession; the trial court's comments about failure of the witness to speak up and the matter of allegedly newly discovered evidence presented in the companion case.

Approximately a week before Randolph shot Castlin, he and a friend allegedly confronted Randolph and threatened to kill him or a member of his family if he did not return certain stolen items.

On January 18, 1985, Randolph visited Castlin at his trailer to discuss the alleged burglary. Randolph carried a .22 caliber pistol in his coveralls. Both had been drinking. Randolph testified he told Castlin that he would seek a warrant to keep him away from his family. Randolph said that Castlin became enraged and threatened to kill him. Randolph said he ran outside the trailer with Castlin chasing him and he pulled his pistol from his pocket. He claims that Castlin kept approaching him so he fired. A scuffle followed and Randolph says that they were both reach-

ing for the pistol when a third person carrying a shotgun approached and shot Castlin, but he refused to name this person. Randolph testified that he then requested a neighbor to call police because he had killed Castlin.

Randolph's confession, given approximately four hours after the shooting, makes no mention of a third party killing the victim. Instead, he confessed that when he went to the trailer, he also carried a shotgun which he had left outside in a ditch. The trial confession states that he picked up the shotgun and fired it after Castlin chased him out of the trailer.

The prosecution's proof indicated that after the shooting, Randolph went to the home of Carmel Connor and told them he had shot Castlin. He also told the Sheriff that he killed him. On his trip to the jail, he stated to a deputy sheriff that he killed him and that he would do it again. Following his conviction, this appeal was instituted.

The judgment of conviction is reversed and this matter is remanded for a new trial.

The failure of juror Miller to reveal on voir dire examination that she was employed by the Commonwealth's Attorney was implied bias. There was reasonable grounds to believe that she could not render a fair and impartial verdict. Therefore Randolph is entitled to a new trial.

There is no doubt that the jurors, including juror Miller were asked about their relationship with the Commonwealth's Attorney.

The trial judge asked all the jurors as follows: " ... your relationship to the parties that are involved, and your connection with any of the attorneys and things of this sort."

In regard to the Commonwealth's Attorney the specific questions were asked:

> Does anyone have any association with those gentlemen, to the extent that you feel it would be embarrassing to you to sit on the jury and to return a verdict against what you may perceive as your interests in this case? I take it from your silence that you do not...."

Juror Miller remained silent and did not inform the court of the fact that she was an employee of the Commonwealth's Attorney. The qualifying phrase "to the extent that you feel it would be embarrassing to sit on the jury," does not cure the bias.

On the second day of trial, counsel for Randolph moved the court in chambers for a mistrial because of the fact that he had discovered that during the immediate preceding recess that juror Miller was in fact an employee of the Commonwealth's Attorney.

■ A potential juror may be disqualified from service because of connection to the case, parties or attorneys and that is a bias that will be implied as a matter of law. The trial court must determine the existence of bias based on the particular facts of each case. *Tayloe v. Commonwealth,* Ky. 335 S.W.2d 556 (1960).

Even where jurors disclaim any bias and state that they can give the defendant a fair trial, conditions may be such that their connection would probably subconsciously affect their decision in the case. It is always vital to the defendant in a criminal prosecution that doubt of unfairness be resolved in his favor.

■ A conviction may be set aside and a new trial granted where one of the jurors had worked with a prosecutor to select the jury unfavorable to the defendant. *See Ellis and Whobrey v. Commonwealth,* 207 Ky. 162, 168 S.W. 1087 (1925).

RCr 9.36 reads in part that where there is reasonable ground to believe that a juror cannot render a fair and impartial verdict that juror shall be excused.

■ It is obvious that an implied bias challenge lies against juror Miller because her position as secretary for the Commonwealth's Attorney gives rise to a loyalty to her employer that would imply bias. In addition it is entirely possible that she may have been in a position to have known about the case prior to trial. It is the

possibility of bias or prejudice that is determinative in a ruling on a challenge for cause. *See Pennington v. Commonwealth*, Ky. 316 S.W.2d 221 (1958).

■ The right to challenge a juror includes the incidental right that the information elicited on voir dire shall be true. A verdict is improper when a peremptory challenge is not exercised by reason of false information. The question is not whether an improperly established tribunal acted fairly but whether the tribunal was established at all. *See Johnson v. Commonwealth*, 311 Ky. 182, 223 S.W.2d 741 (1949).

In this two-day trial, thirteen jurors were impaneled to preclude the possibility of a mistrial in the event that one of the jurors was not able to return for service on the second day. Counsel for Randolph moved the trial judge to dismiss juror Miller from deliberating the case, leaving the other twelve jurors to return a verdict. Randolph requested that the dismissal take place in such a manner that it would not be revealed to Miller or the other jurors. This motion was overruled by the trial court. The error committed in this case could have been corrected had the trial judge granted this motion.

The other issues presented on appeal are not grounds for reversal. Three of the questions merit comment. It was not reversible error when the trial court ruled that Randolph was not entitled to instructions on second-degree manslaughter and reckless homicide.

*Baker v. Commonwealth*, Ky. 677 S.W.2d 876 (1984) holds that the legislature did not provide for the inclusion of an intentional offense within the definition of reckless homicide. In *Baker, supra*, as in this case, the appellant does not contend that he failed to perceive the risk that firing shots at the deceased would cause death. Therefore, as in *Baker*, this Court cannot escape the fact that an act claimed to be done in self-defense is intentional. It is not reckless as that term is defined by the statute.

■ There is no question that Randolph's act of shooting was intentional. The instructions on specific defenses should be limited to intentional crimes. *Gray v. Commonwealth*, Ky. 695 S.W.2d 860 (1985).

■ Second-degree manslaughter consists of causing the death of another wantonly, not intentionally. KRS 507.040. A person acts wantonly with respect to a result when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur. KRS 501.020(3); *Gray, supra*. Wanton conduct is to be distinguished from intentional conduct and is punishable by a lesser penalty simply because it does not involve the element of evil intent. *Ibid.* at 862. Randolph was not entitled to an instruction on second-degree manslaughter and reckless homicide.

The trial court erred in refusing the cross-examination of the county attorney, a prosecution witness, regarding the condition of Randolph and circumstances at the time of the confession. Upon retrial, consideration must be given to these factors pursuant to the direction of the United States Supreme Court as set out in *Crane v. Kentucky*, —— U.S. ——, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986).

In view of the fact that this case is reversed and remanded for a new trial, we do not believe it is necessary to discuss the other alleged errors because they do not constitute grounds for reversible error and may not occur on retrial. Randolph's contention that he should be granted a new trial on grounds of newly discovered evidence is rendered moot by our decision.

The judgment is reversed and the matter is remanded for a new trial.

All concur.